# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>     v.<br><br>GERALD L. HOLMES, (01),<br>a/k/a "Jerry,"<br>a/k/a "Joker,"<br><br>                      Defendant. | Case No. 17-00275-01-CR-W-DGK |

## **PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, and Bradley K. Kavanaugh, Assistant United States Attorney, and the defendant, Gerald L. Holmes, a/k/a "Jerry," a/k/a "Joker" ("the defendant"), represented by Richard Dale Jacoby.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to the following counts of the Second Superseding Indictment: Count One, charging him with a

1

violation of 18 U.S.C. §§ 1201(a)(1) and (c), that is, Conspiracy to Commit Kidnapping; Count Two, charging him with a violation of 18 U.S.C. §§ 1201(a)(1) and 2, that is, Kidnapping; Count Six, charging him with a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846, that is Conspiracy to Distribute 50 Kilograms or More of Marijuana; and Count Seven, charging him with a violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2, that is Possession and Brandishing of Firearms in Furtherance of a Drug Trafficking Crime. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is in fact guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which he is pleading guilty are as follows:

> On or between May 1, 2016 and September 13, 2016, **GERALD L. HOLMES**, RANDAL G. HOLMES, MICHAEL C. BORRUSCH and JEREMY R. BOND knowingly and intentionally combined, conspired and agreed with each other and others to distribute 50 kilograms or more of marijuana, a Schedule I controlled substance, in the Western District of Missouri.
>
> As part of this conspiracy, **GERALD L. HOLMES** would drive to Colorado to obtain pound-quantity amounts of marijuana from BORRUSCH. On several of those occasions, C.H. accompanied **GERALD L. HOLMES** to Colorado. **GERALD L. HOLMES** paid BORRUSCH varying amounts, between $1,600 to $2,400 per pound, depending on the type and quality of marijuana available. On occasions when BORRUSCH did not have enough marijuana available, BORRUSCH would serve as a broker and obtain marijuana from other sources in Colorado for **GERALD L. HOLMES** for a fee of $100 per pound. During this conspiracy, RANDAL G. HOLMES received $100 for every pound **GERALD L. HOLMES** obtained in Colorado and brought to the Kansas City metropolitan area. This was because BORRUSH had previously been RANDAL G. HOLMES's source of supply. During the conspiracy, BOND invested $10,000 into the marijuana operation. In return, BOND received $1,000 a week as interest and free marijuana until the entire principal investment was repaid in full. This investment allowed **GERALD L. HOLMES** and C.H. to purchase greater quantities of marijuana per trip. Once it reached the greater Kansas City metropolitan area, the marijuana was then resold by **GERALD L. HOLMES** and C.H. C.H. made four trips to Colorado with **GERALD L. HOLMES**. The first trip,

2

**GERALD L. HOLMES** and C.H. returned with approximately 2 to 3 pounds of marijuana. The second trip, they returned with 8 pounds of marijuana. On the last two trips together, they returned each time with 20 pounds of marijuana. **GERALD L. HOLMES** made 10 additional trips alone to Colorado. On nine of those trips, **GERALD L. HOLMES** returned with between 5 to 15 pounds of marijuana per trip. The last trip, **GERALD L. HOLMES** returned with 25 pounds of marijuana. Conservatively, this amounts to a minimum of 120 pounds of marijuana purchased in Colorado and returned to the Western District of Missouri for distribution.

On or between September 12, 2016, and September 13, 2016, in the Western District of Missouri, **GERALD L. HOLMES**, RANDAL G. HOLMES, and RICHARD M. PHOENIX, voluntarily and intentionally combined, conspired and agreed with each other to unlawfully seize, confine, kidnap, abduct, carry away and otherwise assault, maim and harm C.H., and in committing or in furtherance of the commission of the offense, used telephones, cellular phones, motor vehicles and firearms, which are means, facilities, and instrumentalities of interstate or foreign commerce.

On September 12, 2016, **GERALD L. HOLMES** and RANDAL G. HOLMES arrived at the residence of W.H., father of C.H., in Independence, Jackson County, Western District of Missouri. **GERALD L. HOLMES** and RANDAL G. HOLMES told W.H. that they needed to speak with C.H. regarding money intended for the purchase of marijuana they claimed C.H. had taken from **GERALD L. HOLMES**. During their conversation, **GERALD L. HOLMES** removed a firearm from his waistband and placed it on a table in front of W.H. RANDAL G. HOLMES instructed W.H. to call C.H. and to tell him that W.H. was being held at gunpoint and that C.H. needed to come to the residence right away. The Government's trial evidence would be that when C.H. arrived at the residence, RANDAL G. HOLMES pointed a firearm at C.H. and told C.H. to get into RANDAL G. HOLMES's red Ford F-150 pickup truck. While in the vehicle, **GERALD L. HOLMES** struck, punched and choked C.H. as RANDAL G. HOLMES drove away.

RANDAL G. HOLMES and **GERALD L. HOLMES** drove C.H. to RANDAL G. HOLMES's residence in Kansas City, Jackson County, Missouri. Upon arrival at RANDAL G. HOLMES's residence, they met PHOENIX. C.H. was taken to the basement of the residence by RANDAL G. HOLMES, **GERALD L. HOLMES** and PHOENIX. Once in the basement, **GERALD L. HOLMES** continued to assault C.H. with fists, a hammer and tin snips/clippers. During the assault, RANDAL G. HOLMES repeatedly demanded that C.H. disclose where the duffle bag containing the money was located. The Government's trial evidence would be that when

3

RANDAL G. HOLMES and **GERALD L. HOLMES** later left the basement to retrieve the duffle bag, RANDAL G. HOLMES handed PHOENIX a firearm and told PHOENIX to shoot C.H. if he attempted move off a desk he had been placed on in the basement during the assault. PHOENIX held C.H. at gunpoint until RANDAL G. HOLMES and **GERALD L. HOLMES** returned to the residence.

RANDAL G. HOLMES and **GERALD L. HOLMES** later drove C.H. in RANDAL G. HOLMES's PT Cruiser to the residence of J.R.B. in rural Edwards, Benton County, Missouri. As RANDAL G. HOLMES drove them to J.R.B.'s residence, **GERALD L. HOLMES** continued to strike C.H. with fists and the butt of a firearm. While at J.R.B.'s residence, C.H. was told by RANDAL G. HOLMES to call his father, W.H., and to tell him that he was okay, that he had taken a beating, but was okay, that he would be home in a couple of days and that he deserved what had happened. Law enforcement were able to trace the telephone call and on September 13, 2016, officers were able to locate C.H. and arrest RANDAL G. HOLMES and **GERALD L. HOLMES**. The Government's trial evidence would be that while at the residence, law enforcement observed that C.H. had suffered multiple, visible injuries to his face, head, hands and feet. Officers noted that C.H. had trouble walking, that his face was black and blue, as well as swollen with traces of dried blood. Upon receiving medical treatment, it was determined that C.H. had also suffered a fracture in his left hand.

The Government's trial evidence would be that during the course of the kidnapping and conspiracy to kidnap, RANDAL G. HOLMES, **GERALD L. HOLMES** and PHOENIX, aiding and abetting each other, possessed, used and brandished firearms to aid and assist in the commission of both offenses. In the PT Cruiser, officers recovered a Jimenez Arms, Model JA Nine, 9mm pistol, Serial Number 250760 from the driver's door pocket. A hammer with a yellow handle and a green-handled, tin snips/metal shears were also recovered from the vehicle. In the residence where C.H. had been held, law enforcement located a Hi-Point, Model C9, 9mm pistol, Serial Number P1424768. Furthermore, the Government's trial evidence would be that during the course of the conspiracy to distribute 50 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, RANDAL G. HOLMES and **GERALD L. HOLMES**, aiding and abetting each other, possessed, used and brandished firearms to aid and assist in the commission of that drug trafficking crime. In addition to the aforementioned firearms, at the home of **GERALD L. HOLMES**, officers recovered a FN Herstal, Model FNX-40, .40 caliber pistol, Serial Number FX2U018779, a Remington, Model 770, .270 caliber rifle, Serial Number M71841265, a RG, Model RG23, .22 caliber revolver, Serial Number T498046, a Ruger, Model 10/22, .22 caliber rifle, Serial Number

4

821-51424 and a Mossberg, Model 500C, .20 gauge shotgun, Serial Number P527198, along with handwritten drug notes, large bags containing marijuana residue, several vacuum sealed bags containing marijuana residue, a quart jar containing marijuana residue bags, approximately 36.4 grams of marijuana and a digital scale. None of the aforementioned firearms were manufactured in the State of Missouri.

**4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that in calculating the offense level for the charges to which defendant is pleading guilty, the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2), or as part of the "offense of conviction" pursuant to U.S.S.G. § 1B1.2.

**5. Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the Second Superseding Indictment, charging him with a violation of 18 U.S.C. §§ 1201(a)(1) and (c), that is, Conspiracy to Commit Kidnapping, the maximum penalty the Court may impose is life imprisonment, a $250,000 fine, five (5) years of supervised release, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A felony.

The defendant understands that upon his plea of guilty to Count Two of the Second Superseding Indictment, charging him with a violation of 18 U.S.C. §§ 1201(a)(1) and 2, that is, Kidnapping, the maximum penalty the Court may impose is life imprisonment, a $250,000 fine, five (5) years of supervised release, and a $100 mandatory special assessment per felony count of

5

conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A felony.

The defendant understands that upon his plea of guilty to Count Six of the Second Superseding Indictment, charging him with a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846, that is, Conspiracy to Distribute 50 Kilograms or More of Marijuana, the maximum penalty the Court may impose is not more than twenty (20) years imprisonment, a $1,000,000 fine, not less than three (3) years of supervised release, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

Lastly, the defendant understands that upon his plea of guilty to Count Seven of the Second Superseding Indictment, charging him with a violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2, that is, Possession and Brandishing of Firearms in Furtherance of a Drug Trafficking Crime, the minimum penalty the Court may impose is seven (7) years imprisonment, while the maximum penalty the Court may impose is life imprisonment, a $250,000 fine, five (5) years of supervised release, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. Further, notwithstanding any other provision of law, the Court shall not place on probation any person convicted of this offense and any term of imprisonment for this count shall be in addition to and run consecutive to any other term of imprisonment imposed. The defendant further understands that this offense is a Class A felony.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. In determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States

Sentencing Commission. While these Guidelines are advisory in nature, and the Court ordinarily would have the discretion to impose a sentence either less than or greater than the court-determined advisory Guidelines range, in this instance the parties agree, pursuant to Rule 11(c)(1)(C), that the Court must impose sentence as follows: the Court will impose a combined total sentence of not less than 300 months (25 years) and not more 420 months (35 years) imprisonment. The Court will also impose a five-year term of supervised release to follow imprisonment, and a $400 mandatory special assessment. If the Court accepts this plea agreement, it must inform the defendant that sentence will be imposed in accordance with this agreement of the parties. If the Court rejects this plea agreement, it must, on the record and in open court, inform the parties that the Court rejects the plea agreement, advise the defendant personally that because the Court is rejecting the plea agreement the Court is not required to impose sentence in accordance with the agreement of the parties, give the defendant an opportunity to withdraw defendant's guilty plea, and further advise the defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the defendant than the plea agreement contemplated;

      b.      The Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

      c.      As to Counts One, Two and Seven, in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to five (5) years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

      d.      As to Count Six, in addition to a sentence of imprisonment, the Court may impose a term of supervised release of at least three (3) years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

      e.      If the defendant commits a supervised release violation, the Court may revoke supervised release and impose, as to Counts One, Two and Seven, an additional period of imprisonment of up to five (5) years, and an additional period of imprisonment of up to two (2) years as to Count Six, without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed five (5) years, as to Counts One, Two and Seven, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

      f.      Any sentence of imprisonment imposed by the Court will not allow for parole;

7

Case 4:17-cr-00275-DGK   Document 86   Filed 08/17/18   Page 7 of 18

7. **Government's Agreements.**  Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to Conspiracy to Commit Kidnapping, Kidnapping, Conspiracy to Distribute 50 Kilograms or More of Marijuana, and Possession and Brandishing of Firearms in Furtherance of a Drug Trafficking Crime, which are related to the events which arose out of the defendant's conduct described in Paragraph 3 above.  Additionally, the United States agrees to dismiss Count Three and Count Five of the Second Superseding Indictment at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement.  If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence.  The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement.  The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement.  The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8

Case 4:17-cr-00275-DGK   Document 86   Filed 08/17/18   Page 8 of 18

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.

**10. Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. However, if the Court accepts this Rule 11(c)(1)(C) plea agreement, the Court is bound to impose the sentence agreed to by the parties, as set forth in paragraph 6 above;

b. The applicable Guidelines section for the offense of Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1) and (c), and Kidnapping, in violation of 18 U.S.C. §§ 1201(a) and (2), is U.S.S.G. § 2A4.1(a), which provides for a base offense level of 32. These counts are grouped together into a single Group, pursuant to U.S.S.G. § 3D1.2(a) and (b);[1]

c. The Government believes that a +6 level enhancement is applicable, pursuant to U.S.S.G. § 2A4.1(b)(1) because a ransom demand was made for money the defendant and his co-conspirators had alleged C.H. had taken. The defendant reserves the right to contest this enhancement. The parties agree that the Court will determine the applicability of this enhancement at sentencing;

d. The Government believes that a +2 level enhancement is applicable, pursuant to U.S.S.G. § 2A4.1(b)(2)(B) because C.H. sustained serious bodily injury. The defendant reserves the right to contest this enhancement. The parties agree that the Court will determine the applicability of this enhancement at sentencing;

e. The Government believes that a +2 level enhancement is applicable, pursuant to U.S.S.G. § 2A4.1(b)(3) because a dangerous weapon (i.e., hammer and tin snips/clippers), was used. The defendant reserves the right to contest this enhancement. The parties agree that the Court will determine the applicability of this enhancement at sentencing;

f. The parties agree that the offense of Possession and Brandishing of Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2, is governed by the provisions of U.S.S.G. § 2K2.4(b) and the guideline sentence for this offense is the minimum term of imprisonment required by statute, which shall be imposed to run consecutively to any other sentence of imprisonment. Furthermore, pursuant to U.S.S.G. § 3D1.1(b)(1) and 5G1.2(a), this offense is not grouped with other offenses of conviction;

---

[1] The applicable Guidelines section for the offense of Conspiracy to Distribute 50 Kilograms or More of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846, is U.S.S.G. § 2D1.1. The parties agree that the minimum amount for which the defendant should be held responsible, based upon a jointly undertaken criminal activity, pursuant to U.S.S.G. § 1B1.3, is at least 120 pounds of marijuana. Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(11), this provides for a base offense level of 18. A +2 level enhancement is applicable, pursuant to U.S.S.G. § 2D1.1(b)(2) because the defendant and his co-conspirators used violence, made a credible threat to use violence, or directed the use of violence. However, this offense is 9 or more levels less serious than the Group for Conspiracy to Commit Kidnapping and Kidnapping and is therefore disregarded for purposes of increasing the applicable offense level, pursuant to U.S.S.G. § 3D1.4(c).

g.  The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently.  Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(a) and (b) of the Sentencing Guidelines.  The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

h.  The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

i.  The defendant understands that the estimated Guideline calculations set forth in the subsections of this paragraph do <u>not</u> bind the Court or the United States Probation Office with respect to the Court's determination of the applicable advisory Guidelines;

j.  The defendant and the United States confirm that the agreed sentence set forth in paragraph 6 above is both reasonable and authorized by law;

k.  The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum.  The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment.  The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

l.  The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon sentence and Guidelines calculations contained in this agreement.

**11.  Effect of Non-Agreement on Guidelines Applications.**  The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any

11

Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. Oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. Comment on the evidence supporting the charges in the indictment;

    c. Oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court does not impose the sentence agreed to by parties in this agreement; and

    d. Oppose any post-conviction motions for reduction of sentence, or other relief.

**14. Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty;

12

b. The right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

c. The right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. The right to confront and cross-examine the witnesses who testify against him;

e. The right to compel or subpoena witnesses to appear on his behalf; and

f. The right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

**15. Waiver of Appellate and Post-Conviction Rights.**

a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the

13

Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16.** **<u>Financial Obligations.</u>** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. The Court shall order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged related criminal activity.

    b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

    c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

    d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

    e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

    f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $400 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

15

**19. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20. Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

**21. No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

**22. Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Timothy A. Garrison
United States Attorney

Dated: 8/17/18   /s/Bradley K. Kavanaugh
Bradley K. Kavanaugh
Assistant United States Attorney
Narcotics & Violent Crimes Unit

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Second Superseding Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 8/17/18   /s/Gerald L. Holmes
Gerald L. Holmes
Defendant

I am defendant Gerald L. Holmes's attorney. I have fully explained to him his rights with respect to the offenses charged in the Second Superseding Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines, which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Gerald L. Holmes's decision to enter into this plea agreement is an informed and voluntary one.


Dated:  8/17/18  /s/Richard Dale Jacoby
Richard Dale Jacoby
Attorney for Defendant Gerald L. Holmes